UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JOSE NEGRON,

                              Petitioner,

            v.

UNITED STATES OF AMERICA,

                              Respondent.

**MEMORANDUM AND ORDER**
99-cr-1044-1 (LDH)

---

LaSHANN DeARCY HALL, United States District Judge:

      Petitioner Jose Negron petitions pursuant to 28 U.S.C. § 2255 for a writ of habeas corpus vacating his 18 U.S.C. § 924(c) conviction and sentence.

## BACKGROUND

      On June 19, 2000, Petitioner pleaded guilty before the Honorable Jack B. Weinstein pursuant to a plea agreement to Counts Twelve, Thirteen and Twenty-Five of a twenty-five count Superseding Indictment filed July 26, 2000 (the "Indictment"). (*See* June 19, 2020 Guilty Plea Tr. ("Tr."), ECF No. 535-1.) Count Twelve charged Petitioner with kidnapping Reina Figueroa, Gerardo Figueroa, and Adriana Figueroa, in violation of N.Y. Penal Law §§ 135.25 and 20.00, in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1). (Indictment ¶¶ 55, 56, ECF No. 91.) Count Thirteen charged Petitioner with conspiracy to commit two robberies, including the robbery of Romar Check Cashing in June 1999, in violation of 18 U.S.C. § 1951. (*Id.* ¶ 57.) Count Twenty-Five charged Petitioner with the use of a firearm in connection with the predicate offenses charged in Counts Nine, Ten, Eleven, Twelve, and Twenty-Four, in violation of 18 U.S.C. § 924(c). (*Id.* ¶ 69.) Relevant to the instant petition is Count Twenty-Four, which charged Petitioner with attempted Hobbs Act robbery of Romar Check Cashing in violation of 18 U.S.C. § 1951. (*Id.* ¶ 68.)

1

During the plea colloquy, Judge Weinstein asked Petitioner, "Tell me what you did that constituted these three crimes?" (Tr. 14:15–16.) Petitioner then described his role in the "conspiracy and kidnapping of the Figueroa family," which was charged in Count Twelve. (*Id.* 14:17–18:19.) Several times during the colloquy, Petitioner strayed from an account of that kidnapping and referred to the separate kidnapping of Figueroa Cruz, husband of Reina Figueroa and father to Gerardo Figueroa and Adriana Figueroa, as well as the attempted robbery of Romar Check Cashing, where Figueroa Cruz worked. (*See, e.g.*, *id.* 15:5–11.) At one point, the Court asked, "why did you agree to kidnap this person?" to which Petitioner responded, "attempt a robbery," referring to the attempted robbery of Romar Check Cashing. (*Id.* 16:10–12.) The Government then interjected and stated, "your honor, he's pleading to Count 12, the wife, and two children." (Tr. 16:16–17.) The Court then redirected Petitioner to the kidnapping charge related to the Figueroa family:

> THE COURT: How about the wife and two children, were they taken as part of the agreement you made with these others?
>
> DEFENDANT: Yes, your honor.
>
> . . .
>
> THE COURT: And who carried the gun?
>
> DEFENDANT: One of my defendants . . . numerous of them, Gonzalez, Pratt.

(*Id.* 16:18–17:4.) Next, the Government asked the court to elicit an additional allocution related to the kidnapping. (*Id.* 17:15–17.) Petitioner then further detailed his role in the kidnapping. (*Id.* 17:21–18:17.) At the end of this exchange, the Government stated, "I think that satisfies Count 12 [kidnapping] and Count 25 [brandishing a firearm]." (*Id.* 18:18–19.) Petitioner then went on to describe the robbery conspiracy charged in Count Thirteen. (*Id.* 18:22–19:8.)

Petitioner did not reference any firearm used in connection with the robbery conspiracy. (*See id.*)

On March 14, 2001, Judge Weinstein sentenced Petitioner to 319 months' imprisonment followed by five years' supervised release. (Judgment, ECF No. 202.) Specifically, Petitioner received 235 months' imprisonment on Count Twelve, to run concurrent with a 235-month sentence on Count Thirteen. (*Id.*) Petitioner received an additional seven years' imprisonment (84 months) on Count Twenty-Five, to run consecutively to the sentences imposed on Counts Twelve and Thirteen. (*Id.*)

Petitioner's first request for a writ of habeas corpus was denied on May 14, 2008. (ECF No. 419.) On June 23, 2016, Petitioner filed the instant petition and simultaneously filed in the Second Circuit a request for permission to file a second successive § 2255 petition.[1] (Pet., ECF No. 531; *see also* ECF No. 489-1.)

Petitioner seeks to vacate his conviction and sentence for the § 924(c) charge (Count Twenty-Five) pursuant to the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591, 593 (2015) and *Welch v. United States*, 136 S. Ct. 1257 (2016). (Pet. 5.) Section 924(c) imposes a mandatory consecutive term of imprisonment when a defendant uses or carries a firearm during and in relation to, or possesses a firearm in furtherance of, *inter alia*, a "crime of violence." 18 U.S.C. § 924(c)(1)(A). As defined by § 924(c)(3), a "crime of violence" is a federal felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another [the "Elements Clause" or "Force Clause"], or

---

[1] A second or successive petition must be certified by a panel of an appropriate court of appeals to contain, *inter alia*, "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h); *see also Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004) (quoting same).

3

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [the "Residual Clause"].

*Id*. § 924(c)(3). In *Johnson*, the Supreme Court ruled that the residual clause of the Armed Career Criminal Act ("ACCA"), which defined the term "violent felony" to include any felony that "involves conduct that presents a serious potential risk of physical injury to another," was unconstitutionally vague. 576 U.S. at 593, 596–99. In *Welch*, the Supreme Court subsequently held that *Johnson* "has retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

The instant petition was stayed for approximately four years. (USCA Mandate, ECF No. 527.) In that time, the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019). In *Davis*, the Court extended the rationale of *Johnson* and *Welch* to § 924(c)(3)(B), holding that § 924(c)'s residual clause was also unconstitutionally vague. *Davis*, 139 S. Ct. 2319, 2326–27. Accordingly, a predicate crime is a "crime of violence" under § 924(c) only if it qualifies under the statute's Force Clause.

On June 12, 2020, the Second Circuit found that Petitioner made a prima facie showing that the proposed § 2255 motion satisfied the requirement of § 2255(h) and granted his motion for leave to file a successive § 2255 motion. (USCA Mandate.) In granting Petitioner's motion for leave to file a successive petition, the Second Circuit directed that:

> The district court should determine, in addition to all other relevant issues, what predicate crime(s) supported the § 924(c) conviction. Although the indictment listed five predicates, Petitioner's guilty plea colloquy strongly suggests that there ultimately was only a single predicate, the kidnapping charged in count 12 (although a related robbery was also mentioned).

(*Id*. 1) The Second Circuit went on to state:

> Assuming the § 924(c) predicate is determined to be kidnapping in violation of New York Penal Law § 135.25, the district court also should consider *United States v.*

4

> *Praddy*, 729 F. App'x 21, 23-24 (2d Cir. 2018) (summary order) when reviewing Petitioner's challenge, in light of case law suggesting that kidnapping by deception, as defined in New York law, has actually been prosecuted in New York, see *People v. Valero*, 134 A.D.2d 635, 636 (2d Dep't 1987) ("The crime of kidnapping in the first degree requires that there be an abduction[,] which is merely a serious form of restraint [that] can be accomplished by means of deception." (citations omitted)); *People v. Valero*, 466 N.Y.S.2d 600, 602 (Suffolk Cty. Ct. 1983), and recent case law analyzing whether the similar federal definition of kidnapping, under 18 U.S.C. § 1201(a), satisfies the § 924(c) force clause . . . .

(*Id*. 2.)

## STANDARD OF REVIEW

Section 2255, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, permits a prisoner who was sentenced in federal court to move the court which imposed the sentence to vacate, set aside, or correct the sentence on the grounds that the sentence: (1) "was imposed in violation of the U.S. Constitution or the laws of the United States;" or (2) "was entered by a court without jurisdiction to impose the sentence;" or (3) "exceeded the maximum detention authorized by law;" or (4) "is otherwise subject to collateral attack." 28 U.S.C. § 2255; *see also Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (quoting same). A § 2255 movant bears the burden to prove the claims in his § 2255 motion by a preponderance of the evidence. *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000) (citing *Harned v. Henderson*, 588 F.2d 12, 22 (2d Cir. 1978) ("It is, of course, well settled that in federal habeas corpus proceedings the burden of proving a constitutional claim lies with the petitioner and that the nature of that burden is the customary civil one of a preponderance of the evidence.").

## DISCUSSION

### I. Waiver of Appealability

A defendant's knowing and voluntary waiver of the right to collaterally attack his conviction and/or sentence is presumed enforceable. *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam). Indeed, the Second Circuit has noted that "exceptions to the

5

presumption of the enforceability of a waiver . . . occupy a very circumscribed area of . . . jurisprudence." *United States v. Gomez–Perez*, 215 F.3d 315, 319 (2d Cir. 2000). The Government argues Petitioner knowingly and voluntarily waived his right to appeal or collaterally attack his sentence, to which no exception applies. (Gov't's Opp'n Pet. ("Gov't's Opp'n") 7–8, ECF No. 538.) The Court disagrees.

"A violation of a fundamental right warrants voiding an appeal waiver." *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2010). Moreover, "a defendant may be deemed incapable of waiving a right that has an overriding impact on public interests, as such a waiver may irreparably discredit the federal courts." *Id.* at 148 (citation omitted). In *Bonilla v. United States*, like here, the court considered whether an appellate waiver can bar a § 2255 claim that a § 924(c) conviction is invalid under *Davis*. *Bonilla v. United States*, 07-CR-0097, 2020 WL 489573, at *2–3 (E.D.N.Y. Jan. 29, 2020). In finding that an appeal waiver did not bar the petitioner's claim, the *Bonilla* court observed, "[i]t is difficult to imagine a right more fundamental than the due process right implicated when a new rule changes the scope of the underlying criminal proscription such that a defendant stands convicted of an act that the law does not make criminal." *Id.* at *3 (quoting *Leyones v. United States*, 10-CR-743 (ARR), 2018 WL 1033245, at *3 (E.D.N.Y. Feb. 22, 2018)).

Contrary to the Government's argument, *Sanford v. United States* does not compel a different outcome in this case. (*See* Gov't's Opp'n 7.) In *Sanford*, the court refused to entertain the petitioner's argument that his career offender enhancement under the residual clause of the United States Sentencing Guidelines (the "Guidelines") § 4B1.2(a)(2) was unconstitutional as the petitioner's appellate waiver barred consideration of this issue. *Sanford*, 841 F.3d at 579. Significantly, *Sanford*, and each of the cases relied upon by *Sanford*, dealt with challenges to the

6

sentence imposed, rather than the basis of the conviction itself. *See, e.g., United States v. Lee*, 523 F.3d 104, 106 (2d Cir. 2008) (finding appeal waiver applied where defendant challenged the disparity between the quantity of powder cocaine and crack cocaine necessary to trigger a statutory ten-year mandatory minimum sentence); *United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) (finding that a defendant's "inability to foresee that subsequently decided cases would create new appeal issues does not supply a basis for failing to enforce an appeal waiver" in a challenge to a sentence post-*United States v. Booker,* 543 U.S. 220, 125 (2005)). The context here is different—unlike in *Sanford*, Petitioner is not challenging his sentence but rather the constitutionality of his underlying conviction. And, nothing in *Sanford* expressly precludes the Court from finding the waiver of appealability is voided where a petitioner challenges the constitutionality of his conviction, rather than the length of a sentence imposed. Thus, this Court in agreement with *Bonilla* in refusing to deem the appellate waiver a bar to relief under these circumstances. *See Bonilla*, 2020 WL 489573, at *2 (rejecting the applicability of *Sanford* and finding appeal waiver did not bar § 924(c) challenge). The *Bonilla* court is not alone. Other district courts in this circuit have made a similar finding on similar grounds. *See, e.g.*, *United States v. Lewis*, 10-CR-622 (ADS), 2020 WL 2797519, at *6 (E.D.N.Y. May 22, 2020) ("[T]he Court declines to hold the appeal waiver enforceable."); *United States v. McCarron*, 15-CR-257 (ADS)(AYS), 2020 WL 2572197, at *4 (E.D.N.Y. May 20, 2020) ("The Court finds that the Defendant's appellate waiver is not enforceable."); *Leyones*, 2018 WL 1033245, at *2–3 (declining to reach the issue because the petition failed on the merits, but expressing "serious doubts" that "an appellate or collateral review waiver [is] enforceable to bar a petitioner's claim that a newly announced constitutional rule warrants vacating his criminal conviction).

To be sure, "[t]he Second Circuit has yet to address whether a *Davis* claim, in and of itself, vitiates an appeal waiver." *United States v. Lewis*, 10-CR-622 (ADS), 2020 WL 2797519, at *5 (E.D.N.Y. May 22, 2020). However, the Second Circuit's mandate in this case provides an indication that it does. Here, the Second Circuit found that Petitioner made a prima facie showing that the proposed § 2255 motion satisfies the requirements of § 2255(h), that is, that the petition is based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." (USCA Mandate 1 (citing 28 U.S.C. § 2255).) Furthermore, the Second Circuit instructed the Court to consider the plea colloquy and the merits of the petition. (*Id.*) That at least suggests that the Second Circuit does not view the appeal waiver in this case as a bar to the petition. *Cf. Sanford,* 841 F.3d at 581 (denying motion for leave to file successive § 2255 motion because appellate waiver barred any challenge to petitioner's sentence).

Moreover, other circuits to consider the issue have found that an appeal waiver did not bar a § 2255 petition in similar circumstances. *See United States v. Cornette*, 932 F.3d 204, 209 (4th Cir. 2019) (finding that appeal waiver did not bar § 2255 petition because in light of recent Supreme Court rulings under which "all sentences rendered under the residual clause [of ACCA] became unconstitutional," petitioner's sentence was imposed "in excess of the maximum penalty" provided by statute); *In re Hammoud*, 931 F.3d 1032, 1041 (11th Cir. 2019) (allowing a defendant that signed an appeal waiver to challenge his sentence under 28 U.S.C. § 2255 based on the Supreme Court's ruling in *Davis*).

Against this backdrop, the Court joins the growing chorus in the district in declining to hold the appeal waiver enforceable and proceeding to the merits of the petition.

8

## II. Crime of Violence

### A. Kidnapping

The Second Circuit first tasked the Court to determine "what predicate crime(s) support the § 924(c) conviction." (USCA Mandate 1.) The parties are in agreement that the § 924(c) conviction was predicated, at least in part, on first degree kidnapping under N.Y. Penal Law § 135.25. (Mem. L. Supp. 2255 Pet. ("Def.'s Mem.") 4, ECF No. 535; Gov't's Opp'n 9.)

Because *Davis* struck down the Residual Clause of § 924(c), kidnapping under N.Y. Penal Law § 135.25 is only a valid predicate under § 924(c) if it satisfies the Force Clause, that is, if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). A determination as to whether the predicate offense satisfies the Force Clause is made using the "categorical approach." *United States v. Hendricks*, 921 F.3d 320, 327 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 870, (2020). Under the categorical approach, a court evaluates whether "the minimum criminal conduct necessary for conviction under a particular statute necessarily involves violence." *Id.* Only the elements of the offense—and not the particular facts of the underlying crime—are considered. *Id.* "Where . . . a statute criminalizes multiple acts in the alternative, thereby defining multiple crimes, it is considered 'divisible,' and a modified categorical approach is used." *United States v. Moore*, 916 F.3d 231, 238 (2d Cir. 2019). Under the modified categorical approach, a court may look to a limited class of documents such as the indictment, jury instructions, or plea agreement and colloquy to determine which alternative offense was the offense of conviction. *See id.* (citing *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)). Once a court determines the offense of conviction, the court returns to a categorical analysis as to that offense, to determine whether the minimum criminal conduct necessary for conviction necessarily involves violence. *See Moore,* 916 F.3d at 238.

9

The kidnapping statute at issue here arises under N.Y. Penal Law § 135.25.[2]  The first element of kidnapping in the first degree comes from the statute's introductory text—abduction of another person.  N.Y. Penal Law  § 135.25.  As provided by the relevant definitional section, abduction of another person is accomplished by either (a) secreting or holding the victim in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force.  *Id*. § 135.00(2).[3]  The second element may be accomplished when the abduction occurs under one of three alternatives:

1. [The abductor's] intent is to compel a third person to pay or deliver money or property as ransom, or to engage in other particular conduct, or to refrain from engaging in particular conduct;  or
2. [The abductor] restrains the person abducted for a period of more than twelve hours with intent to:
    (a) Inflict physical injury upon him or violate or abuse him sexually;  or
    (b)  Accomplish or advance the commission of a felony;  or
    (c) Terrorize him or a third person;  or
    (d) Interfere with the performance of a governmental or political function;  or
3. The person abducted dies during the abduction or before he is able to return or to be returned to safety . . . .

---

[2] N.Y. Penal Law § 135.25 provides that:
A person is guilty of kidnapping in the first degree when he abducts another person and when:
    1.  His intent is to compel a third person to pay or deliver money or property as ransom, or to engage in other particular conduct, or to refrain from engaging in particular conduct;  or
    2.  He restrains the person abducted for a period of more than twelve hours with intent to:
        (a)  Inflict physical injury upon him or violate or abuse him sexually;  or
        (b)  Accomplish or advance the commission of a felony;  or
        (c)  Terrorize him or a third person;  or
        (d)  Interfere with the performance of a governmental or political function;  or
    3.  The person abducted dies during the abduction or before he is able to return or to be returned to safety.
. . .

[3] N.Y. Penal Law § 135.00 reads in full:
1. "Restrain" means to restrict a person`s movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful. A person is so moved or confined "without consent" when such is accomplished by (a) physical force, intimidation or deception . . . .
2. "Abduct" means to restrain a person with intent to prevent his
liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force.

*Id.* § 135.25(1)-(3). The statute is therefore divisible.

Consistent with the modified categorical approach, this Court must turn to the limited documents sanctioned for use—here, the Indictment and the plea transcript.[4] However, neither of these documents are particularly useful. Count Twelve of the Indictment only generally references N.Y. Penal Law § 135.25, without identifying any specific sub-provision of the kidnapping statute, or detailing any specific conduct that might indicate which alternative kidnapping offense was the offense of conviction. (Indictment ¶¶ 55–56.) And, the statements made during the plea hearing—including the colloquy during the Petitioner's allocution—fails to provide further clarity.

The Government disagrees as to the usefulness of the plea hearing and directs the Court to Petitioner's allocution. As to the first element of the offense, "abduct[ion] [of] another person," the Government argues that "the defendant allocuted that he knew the Figueroa family members would be taken against their will and he admitted that several of 'my defendants' carried a loaded gun in connection with kidnapping Cruz Figueroa's wife and children." (Gov't's Opp'n n.4 (citing Tr. 15:6–23).) Therefore, according to the Government, the conduct here falls within subsection (b)—that Petitioner and his coconspirators used or threatened to use deadly physical force to abduct someone. (Gov't's Opp'n n.4.) The Government's argument proves too much. The fact that Petitioner knew that his coconspirators carried a weapon is insufficient to establish the use or deadly use of physical force in connection with the kidnapping as provided by N.Y. Penal Law § 135.00(2)(b). Indeed, the Supreme Court long ago distinguished mere possession of a firearm from with the "use or threatened use" of deadly force. *See, e.g.*, *Welch*, 136 S. Ct. at 1267 (recounting Supreme Court's ruling in *Bailey v.*

---

[4] The Government has indicated that is "has not yet been able to obtain the closed files relating to this case," including the plea agreement, "due to the current COVID-19 pandemic." (Gov't's Opp'n n.3.)

11

*United States*, 516 U.S. 137 (1995), which found that the word "use" in § 924(c)(1) "punishe[d] only active employment of the firearm and not mere possession," and detailing that Congress later reversed *Bailey* by amending § 924(c)(1) to explicitly cover possession of firearms as well as use).

As to the second element, the Government argues that the crime of conviction falls under § 135.25(1) because the abduction of the Figueroa family was done with the intent to "compel [Cruz Figueroa] to pay or deliver money or property as ransom or engage in other particular conduct," *i.e.*, cooperate or deliver money in the attempted robbery. (Gov't's Opp'n 11. (quoting N.Y. Penal Law § 135.25(1).) Petitioner's allocution does not bear this out. At the plea hearing, Petitioner stated that he attempted to rob Figueroa Cruz, the cashier at Romar Check Cashing and "the father [of Gerardo and Adriana]." (Tr. 15:8–15:11, 18:20–19:11.) Thus, from the plea hearing, it is fairly established that the victims of the robbery and the kidnapping were members of the same family. However, Petitioner did not allocute to any additional facts connecting the kidnapping and the attempted robbery. To accept the Government's theory would amount to impermissible speculation. *See United States v. Savage*, 542 F.3d 959, 966 (2d Cir. 2008) (applying the modified categorical approach in the context of determining whether a prior offense constituted a controlled substance offense for the purposes of a Guidelines calculation and explaining the modified categorial approach "demand[s] [] certainty").

Ultimately, a review of the available documents does not allow the Court to discern the specific offense of conviction, preventing the application of the modified categorical approach. Under these circumstances, a court must "instead look to the least of the acts proscribed by the statute to see if it qualifies as a predicate offense[.]" *Jones*, 878 F.3d at 17 (internal quotations and modifications omitted) (employing this approach where the Court was "stymied and unable

12

to employ the modified categorical approach because no one [] produced the record"); *see also Blackmon v. United States*, 3:16-CV-1080 (VAB), 2019 WL 3767511, at *11–12 (D. Conn. Aug. 9, 2019) (same where the record before the court did "not contain the subsection to which [the defendant] pleaded guilty and was convicted").[5]

Here, as to the first element, abduction means to restrain a person. *See* N.Y. Penal Law § 135.00(2). Notably, abduction can be accomplished by "secreting or holding [the victim] in a place where he [or she] is not likely to be found" without any use or threatened use of deadly physical force. *Id.* As to restraint, it is done "without consent," and can be "accomplished by . . . deception." *Id.* § 135.00(1). Therefore, under a plain reading of the statute, the first element of kidnapping may be theoretically accomplished without violence. The least of the second element could fall under either of the three sub-elements, as none require force. Neither an intent to compel a third person to do something (N.Y. Penal Law § 135.25(1)) nor an intent to inflict injury, advance a felony, or terrorize someone (N.Y. Penal Law § 135.25(2)) nor the death of the victim during the crime (N.Y. Penal Law § 135.25(3)) necessarily involves "an element the use, attempted use, or threatened use of physical force against the person or property of another." *See* 18 U.S.C. § 924(c)(3)(A). Therefore, from the statutory text alone, a conviction under N.Y. Penal Law § 135.00 does not necessarily involve force as defined by the Force Clause. This

---

[5] Both *Jones* and *Blackman* dealt with whether a crime qualified as a crime of violence under the Career Offender enhancement section of the Guidelines. *See Jones*, 878 F.3d at 15; *Blackmon*, 2019 WL 3767511, at *9. The Second Circuit has observed that because 18 U.S.C. § 924(c)(3)'s "force clause;" ACCA's "elements clause;" and § 4B1.2(a)(1) of the Guidelines use similar language, cases analyzing any one clause have routinely been applied to the interpretation of another. *See United States v. Evans*, 924 F.3d 21, 29, n.4 (2d Cir. 2019) ("Section 18 U.S.C. § 924(c)(3)'s 'force clause' defines the term 'crime of violence' as 'an offense that is a felony' and 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.' We have noted the similarities between ACCA's 'elements clause' and § 924(c)(3)'s 'force clause' and have accordingly looked to cases analyzing ACCA's elements clause to interpret the 'similarly ... worded' force clause presented in 924(c)(3)(A)). We have done the same with § 4B1.2 of the Guidelines, which defines "crime of violence" for purposes of the 'career offender' enhancement, U.S.S.G. § 4B1.1(a), as an offense that is a felony and that 'has as an element the use, attempted use, or threatened use of physical force against the person of another[.]'"), *cert. denied*, 140 S. Ct. 505 (2019).

13

does not end the Court's inquiry. "To defeat a finding that a predicate act qualifies as a crime of violence as a matter of law under the categorical approach, the defendant 'must at least point to his own case or other cases in which the courts in fact did apply the statute in the manner for which he argues.'" *United States v. Praddy*, 729 F. App'x 21, 23 (2d. Cir. 2018) (summary order) (internal modifications omitted) (quoting *United States v. Hill*, 832 F.3d 135, 139–40 (2d Cir. 2016)), *cert. denied sub nom. Jones v. United States*, 139 S. Ct. 185 (2018)).

Whether kidnapping under New York law constitutes a crime of violence is not a matter of first impression in the Second Circuit. In *United States v. Praddy*, the Second Circuit, considered whether kidnapping in the second degree under New York law is a crime of violence. See *United States v. Praddy*, 729 F. App'x 21, 23–24 (2d Cir. 2018). "A person is guilty of kidnapping in the second degree when he abducts another person." N.Y. Penal Law § 135.20. In *Praddy*, the appellant argued that "abduction can occur without force or risk of force, for example via fraud or trickery." *Id*. at 24. However, by summary order, the Second Circuit concluded that the appellant "conjure[d] up scenarios" in which a defendant would meet the elements of the kidnapping without force or the risk of force, but failed to cite "any case in which courts applied the kidnapping statute in this manner." *Id.* at 23–24. These hypotheticals were thus insufficient for the *Praddy* court to find that that kidnapping in the second degree did not qualify as a crime of violence under § 924(c)'s Force Clause. *Id.* Importantly, summary orders, like *Praddy*, do not have precedential effect. 2d Cir. Local Rule 32.1.1(a). And, here, the Second Circuit explicitly instructed the Court to "consider . . . *Praddy* . . . when reviewing Petitioner's challenge, in light of case law suggesting that kidnapping by deception, as defined in New York law, has actually been prosecuted in New York." (USCA Mandate 2.) Having headed the Second Circuit's instruction, this Court finds that *Praddy* is not persuasive.

14

In *People v. Valero*, the court considered a case in which a 17-year-old complainant testified that a man and woman approached her a convenience store in Suffolk County and asked her if she would accept $10 for an hour of babysitting. 134 A.D.2d 635, 635 (App. Div. 1987). The couple convinced her to get in their car, "by telling her she could call her mother from their nearby home." *Id.* The couple brought her to their apartment in Queens, where she was held against her will and sexually abused. *Id.* The man was subsequently convicted of kidnapping in the first degree in violation of § 135.25. *Id.* He appealed. *Id* In affirming the conviction, the Appellate Division observed that "the crime of kidnapping in the first degree requires that there be an abduction . . . which is merely a serious form of restraint . . . which can be accomplished by means of deception . . . ." *Id.* In other words, as stated by the state trial court, "asportation of the victim, which is a necessary element of kidnapping, . . . may be accomplished by trick or device, and in the first instance, there need not be a resort to physical force or intimidation." *People v. Valero*, 120 Misc. 2d 539, 542, 466 N.Y.S.2d 600, 602 (Suffolk Cty Ct. 1983).

The Government presses that *Valero* dealt with a violation of §§ 135.25(2)(a) and 135.25(2)(b) and is therefore not an applicable hypothetical because Petitioner's crime of conviction is § 135.25(1). (Gov't's Opp'n 10.) The Government's argument misses the mark. *First*, the argument presupposes that the Court could discern which subsection of section 132.25 constituted Petitioner's offense of conviction. As discussed above, the Court is not able to make that finding based on the limited class of documents it is permitted to review. *Second*, the distinction between sections 135.25(1) and 135.25(2) is not relevant, as in every case the abduction element must be satisfied, and *Valero* demonstrates that abduction could be accomplished by deception. Or in other words, without "the use, attempted use, or threatened use of physical force against the person or property of another. § 924(c)(3)(A). In sum,

15

kidnapping under N.Y. Penal Law § 135.25 is not categorically a crime of violence and, therefore, may not serve as the predicate crime from Petitioner's § 924(c) conviction.

### B. Attempted Hobbs Act Robbery (Count Twenty-Four)

In an attempt to save the § 924(c) conviction, the Government argues that the attempted Hobbs Act robbery of Romar Check Cashing (Count Twenty-Four) also constitutes a predicate offense. (Gov't's Opp'n 12–15.) The Court disagrees.

To start, as Petitioner aptly notes, several courts in this circuit have recently found that attempted Hobbs Act robbery is not categorically a crime of violence. *See, e.g., United States v. Culbert*, 453 F. Supp. 3d 595, 601 (E.D.N.Y. Apr. 13, 2020) (granting motion to dismiss § 924(c) charge predicated on attempted Hobbs Act robbery as the predicate offense did not constitute a crime of violence); *United States v. Cheese*, 18-CR-33 (NGG), 2020 WL 705217, at *2 (E.D.N.Y. Feb. 12, 2020) (dismissing § 924(c) charge as attempted Hobbs Act robbery is not valid predicate offense); *United States v. Tucker*, 18-CR-119 (SJ), 2020 WL 93951, at *6 (E.D.N.Y. Jan. 8, 2020) ("It is incorrect to say that a person necessarily attempts to use physical force within the meaning of 924(c)'s elements clause just because he attempts a crime that, if completed would be violent." (internal citation omitted)); *United States v. Halliday*, No. 3:17-CR-00267 (JAM), 2021 WL 26095, at *6 (D. Conn. Jan. 4, 2021) (permitting defendant to withdraw a U.S.C. § 924(c)(1)(A)(iii) guilty plea because attempted Hobbs Act robbery "does not elementally require the use, attempted use, or threatened use of force."); *but see United States v. Jefferys*, 18-CR-359 (KAM), 2019 WL 5103822, at *7 (E.D.N.Y. Oct. 11, 2019) (citing Second Circuit caselaw regarding attempted murder in observing that "the Second Circuit has . . . indicated that where a substantive offense is a crime of violence under § 924(c), an attempt to commit that offense similarly qualifies under the elements clause."). Those cases provide a

fulsome analysis, which the Court will not endeavor to replicate here. In short, the Court agrees that in light of the Second Circuit's determination that conspiracy to commit Hobbs Act robbery is not a crime of violence, and that attempted robbery may be accomplished without the use, attempted use, or threatened use of violence, attempted Hobbs Act robbery is not categorically a crime of violence. *See, e.g.*, *Culbert*, 453 F. Supp. 3d at 598 (starting its analysis with the initial observation that it is likely that an analysis of attempt to commit Hobbs Act robbery should move "in tandem" with the Second Circuit's findings related to conspiracy to commit Hobbs Act robbery); *Tucker*, 2020 WL 93951, at *6 (observing that "given the broad spectrum of attempt liability," the elements of attempt to commit robbery could met without any use, attempted use, or threatened use of violence). As the Court finds its sister courts' analysis persuasive, it joins them in finding the same.

Even if attempted Hobbs Act robbery could qualify as a crime of violence, in this case, it is not a valid predicate offense. Defendant did not plead guilty to attempted Hobbs Act robbery. To be sure, "Section 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." *Johnson v. United States*, 779 F.3d 125, 129 (2d Cir. 2015); *see also United States v. Rivera*, 679 F. App'x 51, 55 (2d Cir. 2017) (finding that defendant's plea allocution provided the factual basis for a predicate offense, even where the Government dismissed that charge at sentencing). Legally sufficient proof may include statements made during a plea colloquy because a court may "accept a defendant's own admissions as true." *Id.* at 55–56 (quoting *United States v. Robinson*, 799 F.3d 196, 199 (2d Cir. 2015)). Such proof is not present in this case.

Petitioner never allocuted that firearms were used in the attempted robbery. As previously described, immediately before Petitioner recounted the details of the kidnapping, the Court asked, "why did you agree to kidnap this person" and the Defendant responded, "attempt a robbery." (Tr. 16:10–12.) The Government then interrupted the allocution to state, "Your honor, he's pleading to Count 12, the wife, and two children." (*Id*. 16:16–17.) After this, the Court redirected the Defendant to the kidnapping of the wife and children:

> THE COURT: How about the wife and two children, were they taken as part of the agreement you made with these others?
>
> DEFENDANT: Yes, your honor.
>
> THE COURT: Did you know that was going to happen?
>
> DEFENDANT: Yes, your honor.
>
> THE COURT: And who carried the gun?
>
> DEFENDANT: One of my defendants . . . numerous of them, Gonzalez, Pratt.

(*Id*. 16:18–17:4.) The Government then asked the Court to elicit an additional allocution related to kidnapping. (*Id*. 17:15–17.) Petitioner further detailed his role. (*Id*. 17:21–18:17.) At the end of this exchange, the Government stated, "I think that satisfies Count 12 [kidnapping] and Count 25 [brandishing a firearm]." (*Id.* 18:18–19.)

Petitioner went on to describe his conduct with respect to Count Thirteen, conspiracy to commit robberies, including that at Romar Check Cashing.

> MIRAGLIOTTA: With respect to the Count 13, the robbery conspiracy, the defendant attempted to rob Ramon.
>
> THE COURT: Who were you attempting to rob?
>
> DEFENDANT: Cashier.

18

(*Id*. 18:20–24.) Petitioner stated the name of the cashier, the date of the robbery and the location of Romar Check Cashing. (*Id*. 18:25–19:8.) Those statements completed the allocution as to the charged conduct. There is no reading of the plea colloquy that supports a finding that Petitioner admitted that firearms were used during the attempted robbery of Romar Check Cashing.

To avoid this inevitable conclusion, the Government argues that Petitioner allocuted that firearms were used during the kidnapping of the mother and two children, and "the kidnappings of the Figueroa family are inextricably linked to the Negron Enterprise's larger criminal scheme to rob Romar Check cashing." (Gov't's Opp'n 13.) However, the record does not indicate the relationship between the kidnapping of the mother and children and the attempted robbery of Romar Check Cashing. Again, the Government interrupted any narrative that may have adduced the legally sufficient evidence required to support its theory.

Furthermore, the Government cites to no authority for the proposition that the Court may consider two separate crimes as "inextricably linked" for the purposes of determining a predicate crime for a § 924(c) conviction. (Gov't's Opp'n 13.) And, this argument cannot withstand scrutiny. Section 924(c)(1)(A) liability attaches to "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . . ." 18 U.S.C. § 924(c)(1)(A). Essentially, the Government asks the Court to find that carrying a firearm during the kidnapping of the mother and children can be construed as "in furtherance of" the attempted robbery because both crimes were part of a larger scheme. However, "in furtherance of" requires "some nexus" between the firearm and the predicate offense. *United States v. Pizzaro*, 797 F. App'x 607, 609 (2d Cir. 2020) (quoting *United States v. Finley*, 245 F.3d 199, 203 (2d. Cir. 2001)) (discussing the definition of "in furtherance of" in § 924(c)(1)(A) related to a drug trafficking predicate offense). "The ultimate question is whether

19

the firearm afforded some advantage (actual or potential, real or contingent) relevant to" the predicate offense. *Id.* (quoting *United States v. Snow*, 462 F.3d 55, 62 (2d Cir. 2006)). Here, there is nothing in the plea allocution to support an argument that the firearm used in the kidnapping of the wife and children afforded some advantage relative to the attempted robbery. Accordingly, Count Twenty-Four—attempted Hobbs Act Robbery—is not a predicate offense for Petitioner's § 924(c) conviction.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is GRANTED. Petitioner's conviction under § 924(c) (Count Twenty-Five) is VACATED. Absent the § 924(c) count, the Court calculates the Guidelines range as 235 to 297 months. The parties do not object to this calculation. (*See* ECF Nos. 545, 546.) An amended judgment will follow.

SO ORDERED.

Dated: Brooklyn, New York
       February 18, 2021

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge